Richabdson, J.,
delivered the opinion of the court:
By the Aet July 20,1868, ch. 186, secs. 1 and 2, (15 Stat. L., 125,) Congress imposed a tax of 50 cents on each proof-gallon of distilled spirits, to be paid by the distiller, owner, or person having possession thereof, before removal from distillery-warehouse, and declared that proof-spirit should be held and taken to be that alcoholic liquor which contains one-half its volume of alcohol of a specific gravity of .7939 at 60° Fahrenheit, aud authorized the Commissioner of Internal Revenue, “for the prevention and detection of frauds by distillers of spirits, to adopt and prescribe for use such hydrometers, saccharometers, weighing and gauging instruments, meters, or other means for ascertaining the quantity, gravity, and producing-capacity of any mash, wort, or beer used, or to be used, in the production of distilled spirits, and the strength and quantity of spirits subject to tax,” as he might deem necessary; and also authorized *560 him to “ prescribe rales aud regulations to secure a uniform aud correct system of inspection, weighing, marking, and gauging of spirits.”
By the third section it was further provided “ that whenever the Commissioner of Internal Bevenue shall adopt and prescribe for use any meter, meters, or meter-safes, it shall be the duty of every owner, agent, or superintendent of a distillery to furnish and attach, at his own expense, such meter, meters, or meter-safes as may have been prescribed for use at his distillery, and to furnish all the pipes, materials, labor, aud facilities necessary to complete such attachment in accordance with the regulations of the Commissioner.”
On the 16th of September, 1868, the Commissioner gave notice, by a general circular, that, under the provisions of the act of July 20,1868, he had “adopted and prescribed for use in distilleries the spirit-meter invented by Mr. Isaac P. Tice, of New York, being the same that was adopted and prescribed by the honorable Secretary of the Treasury on the 19th of April, 1867, under section 15 of the act of March 2, 1867, and subsequently recommended for use by the commission appointed under the joint resolution of Congress; ” aud on the 30th of March, 1869, he promulgated the rules and regulations which he had prescribed in relation to said meter and the use of the same in distilleries.
The invention of this meter had been patented by Mr. Tice, and, as no meters could be made except by him or under his authority, he had a monopoly, by which he could have made distillers pay unreasonable and exorbitant prices for the instruments, which they were obliged by law and the rules of the Commissioner to purchase and use, and which he alone could supply.
For not procuring a meter the penalty upon a distiller was severe; and by the regulations it was made the duty of the collector to close the distillery, and forthwith to institute the proper proceedings for its condemnation and the enforcement of the penalties prescribed by law.
To protect distillers from extortion or the payment of exorbitant or unreasonable prices for what the Commissioner had obliged them to purchase, he entered into an arrangement with Mr. Tice, by which the latter agreed to furnish the different-sized meters at the prices specified. This arrangement and *561 tbe reasons therefor were fully stated in the Commissioner’s circular and in the rules and regulations promulgated by him. It was also prescribed therein that the distiller, in making application to the internal-revenue collector of his district for a meter, should at the same time furnish to the collector a certificate of deposit in a United States depository for the amount of the price of the same, payable to the order of Mr. Ticej that the collector should certify on such application that he had received such certificate, should forward the application to the Office of Internal Eevenue at Washington for transmission to the manufacturer, and, upon the delivery of the meter to the distiller, should at once transmit the certificate of deposit to Mr. Tice, at his address, 314 Third avenue, New York City.
Under a previous law of Congress (the act of March 2,1867, section 15) the Secretary of the Treasury had adapted and prescribed this same Tice meter for use by distillers, with rules and regulations similar to those subsequently promulgated by the Commissioner of Internal Eevenue under the act of 1868; and Thomas McGehan, who was carrying on business at his distillery in Cumminsville, Ohio, on the 6th of April, 1868, deposited with S. J. McGroarty, then collector of internal revenue for the district, $1,500 to secure the payment of a meter for his said distillery, but never received the same while he remained in business.
In August, 1868, McGehan sold out his business to the claimant, Sausser, and transferred to him the distillery, with the receipt given by McGroarty, through his deputy, for the $1,500.
In April, 1868, Eichard B. Pulían succeeded McGroarty as collector, and soon after his appointment two Tice meters arrived at the distillery for delivery. Pulían demanded of the claimant payment of these meters to the amount of $1,800, which was the correct price therefor named in the Commissioner’s circular and regulations. Sausser thereupon produced the receipt of the former collector for $1,500, and demanded that said receipt and payment might be accepted and allowed to him in part payment for the amount demanded. This Mr. Pulían declined to do, and notified the claimant that if payment were not made he would be compelled to close the distillery. McGroarty never sent the money received by him to Mr. Tice, nor to the office of the Commissioner of Internal Eevenue, but misappropriated the same. Efforts made by Pulían and *562 Sausser to induce McGroarty to refund the deposit-money proved unavailing, and on the 5th of June, 1869, the claimant paid the $1,800 to Pulían, who transmitted the same to Mr. Tice, as required by the regulations.
Subsequently Sausser brought an action against the United States upon the receipt of McGroarty, and therein recovered judgment for the $1,500 deposited with him, and that judgment has been paid. (9 O. Ols. R., p. 338.)
Both of these meters were defective in their construction, and, although some time afterward attached to the distillery, were never adjusted for use, no assessments for spirits or taxes on spirits were ever determined by them, and they were taken down to get them out of the way. In June, 1871, the use of the Tice meter was discontinued throughout the country, the Commissioner of Internal Revenue on that day having issued a circular setting forth that “ it having been ascertained by experience that these meters, as a class, do not fully answer the purpose for which they were intended, their use is hereby discontinued, and all existing orders prescribing the same are revoked. All meters attached to distilleries may be detached. The meters being the property of distillers, they will be permitted to dispose of them as they may desire.”
The petitioner now brings this action to recover from the United States the $1,800 paid to the collector of internal revenue- and forwarded to Mr. Tice, the manufacturer, on the ground of a failure of consideration, or upon an implied contract which he claims the defendants made, by their rules, to supply merchantable and perfect meters, adapted to the purposes mentioned in the law and regulations, and adequate therefor.
In our opinion the claimant has no cause of action. These meters were adopted and prescribed for use for the sole benefit of the United States “ for the prevention and detection of fraud by distillers of spirits,” and it was never contemplated by the law, or the rules of the Commissioner, that an article should be supplied which would necessarily be of any special service to the distiller, or of any merchantable value to him. It was made the dirty of the Commissioner by law to determine what instruments, whether “ hydrometers, saccharometers, weighing or gauging instruments, or meters,” he should deem necessary to be used by distillers to protect the United States against fraud in the collection of the revenues. And the same law *563 made it the duty of distillers to procure, attach, and use whatever meter the Commissioner should, adopt and prescribe.
When the Commissioner had adopted and prescribed for use the Tice meter, distillers were as much bound to procure, attach, adjust, and use that particular instrument as they were to give the bond or pay the taxes imposed upon them by law. The use of that meter was one of the terms or conditions upon which a distiller might engage in business, and without it he was liable to penalties, and his distillery might be closed. It was immaterial whether the Commissioner erred in his judgment or not; his decision was final and conclusive. A distillery with a much better and more correct apparatus attached and in use would not thereby be equipped according to the requirements of law. But with the Tice meter the distiller was authorized to carry-on his business, however useless the instrument might be for the purposes intended by the Commissioner. It was the misfortune and to the injury of the defendants alone if they prescribed an apparatus which proved to be of no benefit to them, and the distiller lost nothing thereby. To him there was- no failure of consideration by reason of the prescribed meter not fully answering the purpose for which it was intended. So-far as he was interested therein, it served his purpose; the purchase and use of it entitled him to continue his business.
That a promise to distillers that meters would be adopted! and prescribed which should be adequate to the purposes intended is not implied by the law or the regulation is too-obvious to require serious consideration, since the purposes intended were to prevent frauds from being committed by the distillers themselves and to detect them when committed, and the adequacy of the instrument for those purposes was immaterial to honest distillers and would not be desired by others.
Nor can the claimant recover of the defendants because the particular meters received by him were defective in their construction, could never be used, and were of no' merchantable value. It was the duty of the distiller, by law and the regulations, to procure the meters and have them attached and adjusted for use at his own expense. The defendants never undertook to have their officers obtain, inspect, deliver, and receive payment.for the meters required. The provisions in the regulations, by which distillers might apply to the collector of internal revenue and deposit with him a bank-certificate for *564 tbe money necessary for the payment of meters, were made for the purchasers'' benefit exclusively, and to protect them against extortion or unreasonable prices. But this did not prevent the claimant from dealing directly with Mr. Tice, if he saw fit, nor from making other and different arrangements as to the price of the meters and the terms and manner of payment. It will be seen that by the regulations the defendants, although taking applications therefor through' their officers, were not to furnish the meters themselves nor to receive payment for them when delivered. The application was to be, or might be, forwarded through the office of the Commissioner, but not the deposit-money, which was to be placed in a bank by the distiller, and a certificate therefor taken out payable only to Mr. Tice, or his order. This certificate was to be delivered to and retained by the collector until Mr. Tice should forward the meters, when it was to be forthwith sent to him. The money was never to be drawn .by or come into the hands of the collector. The certificate of ■deposit was to be held for a specific purpose, to wit, to insure <the delivery of the meters, and, when they were delivered and the certificate was forwarded to Mr. Tice, the collector’s duty ■was fully performed. Under the former regulations and circular of the Secretary of the Treasury the rule was different as to the money paid by distillers, and the collectors were authorized and directed to receive and retain the money itself in their own hands until the delivery of the meters, when it was to be forwarded to Mr. Tice. For reasons which do not appear, the collector in this case followed the instructions of the former rules instead of those then in force, and accepted money in lieu of a certificate of deposit; but as he promptly forwarded the money to Mr. Tice, that fact is immaterial and no question arises upon it. Payment was made to the owner of the meters, and whether by certificate .of deposit or money the result is the same.
The meters were thus purchased of Mr. Tice, and not of the defendants, and the latter made no express or implied warranty that all the meters which Mr. Tice would furnish would be perfect and in good condition. The remedy for any defect in the instruments was. against the vendor, by whom they were undoubtedly warranted to be in good order and condition. But the defendants made no express warranty, either as principals or as surety for Mr. Tice, and as they were never the owners of the meters, nor the vendors of the same, no implied warranty can be inferred.
*565 The only objection which the claimant made against paying $1,800 for the two meters furnished him was, that he had already deposited $1,500 with the former collector, towards payment, and he only asked that the amount sp deposited might be allowed him. That objection has now been removed by his recovery of the amount from the defendants in an action heretofore determined. The protest which he sets up was limited to that objection, and even that was not pressed when he finally made payment of the $1,800 demanded of him.
But we do not rest the decision upon the defects of the protest, but upon the grounds that there was no warranty on the part of the defendants, either expressed or implied, and that the defendants are not liable for the money received by their collector of internal revenue for Mr. Tice, and duly forwarded to him according to his duty.
The judgment of the court is that the claimant’s petition be dismissed.